# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SARA R. ALSHATTI,

        Plaintiff,

v.                                              Case No. 8:22-cv-2357-JRK

MARTIN J. O'MALLEY,
Commissioner of Social Security,[1]

        Defendant.

## OPINION AND ORDER[2]

### I. Status

Sara R. Alshatti ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of major depression, anxiety, social issues, obsessive compulsive disorder,

---

[1] Mr. O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Mr. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 8), filed January 11, 2023; Reference Order (Doc. No. 12), entered January 19, 2023.

and bipolar disorder.[3] Tr. at 96, 181. Plaintiff protectively filed an application for DIB on July 19, 2018, alleging a disability onset date of February 14, 2018.[4] Tr. at 154-57. The application was denied initially, Tr. at 95-105, 106, 109-12, and upon reconsideration, Tr. at 107, 116-22.

On June 29, 2021, an Administrative Law Judge ("ALJ") held a hearing,[5] during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 64-94. On November 16, 2021, the ALJ issued a Decision finding Plaintiff not disabled through March 31, 2021, the date Plaintiff was last insured for DIB (the "date last insured" or "DLI"). See Tr. at 45-58.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted additional medical evidence, together with a brief authored by her counsel. See Tr. at 2, 5-6 (Appeals Council exhibit list and orders), 150-53 (request for review), 256-57 (brief), 8-13, 15-24 (medical evidence). On

---

[3] Plaintiff initially sought DIB also on the basis of having osteoarthritis, but later in the administrative proceedings asked that "the allegation of osteoarthritis" be removed as a basis upon which she was seeking DIB. Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative transcript"), filed January 11, 2023, at 96, 181, 200.

[4] Although actually completed on July 20, 2018, see Tr. at 154, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as July 19, 2018, see, e.g., Tr. at 96.

[5] The hearing was held via telephone with Plaintiff's consent because of extraordinary circumstances caused by the early stages of the COVID-19 pandemic. Tr. at 66-68, 132-47.

September 13, 2022, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On October 13, 2022, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff contends the ALJ: 1) improperly accounted for the prior administrative findings of state-agency non-examining psychological consultant Kevin Ragsdale, Ph.D.[6]; 2) erred in failing to account for mild limitations in understanding, remembering, or applying information and adapting or managing herself; 3) circumvented the applicable Medical-Vocational ("Grid") Rule to file Plaintiff not disabled; and 4) improperly found Plaintiff's right knee impairment was not expected to last twelve months, especially in light of new evidence presented to the Appeals Council. Plaintiff's Memorandum in Opposition to the Commissioner's Decision (Doc. No. 14; "Pl.'s Mem."), filed February 10, 2023, at 2-7, 11-13 (issue one), 7-11 (issue two), 13-15 (issue three), 16-19 (issue four). On May 1, 2023, Defendant filed an Amended Memorandum in Support of the Commissioner's Decision (Doc. No. 23; "Def.'s Mem.") addressing the issues. Then, as permitted, Plaintiff on

---

[6] In Plaintiff's memorandum, argument regarding Dr. Ragsdale's opinion is framed as two separate issues (labeled issues one and three). See Pl.'s Mem. at 2-7, 11-13. For ease of discussion, the undersigned combines these issues and renumbers the remaining issues as appropriate.

February 23, 2023 filed Plaintiff's Reply to Defendant's Memorandum in Support of the Commissioner's Decision (Doc. No. 25; "Reply").

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of Dr. Ragsdale's prior administrative findings and Plaintiff's mental functional limitations. On remand, reevaluation of this evidence may impact the Administration's consideration of the remaining issues on appeal. For this reason, the Court need not address the parties' arguments on those issues. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal

---

[7] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 47-58. Prior to engaging in the inquiry, the ALJ found that Plaintiff "last met the insured status requirements of the Social Security Act on March 31, 2021." Tr. at 47. At step one, the ALJ determined Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of March 1, 2014 through her [DLI] of March 31, 2021." Tr. at 47 (emphasis and citation omitted). At step two, the ALJ found that "[t]hrough the [DLI, Plaintiff] had the following severe impairments: lumbar degenerative disc disease, bilateral hip joint arthritis, obesity, major depressive disorder, generalized anxiety disorder, and obsessive-compulsive disorder (OCD)." Tr. at 47-48 (emphasis and citation omitted). At step three, the ALJ ascertained that "[t]hrough the [DLI, Plaintiff]

did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 49 (emphasis and citation omitted).

The ALJ determined that through the DLI, Plaintiff had the following RFC:

> [Plaintiff could] perform medium work as defined in 20 CFR [§] 404.1567(c), except [Plaintiff] can occasionally lift or carry 50 pounds, and frequently lift or carry 25 pounds; sit for a period of 6 hours, stand for a period of 6 hours, and walk for a period of 6 hours; push/pull as much as she can lift or carry; frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; frequent exposure to unprotected heights, moving mechanical parts, and vibration; simple, routine, tasks defined as SVP 1-2, reasoning level no greater than 2; can maintain attention, concentration, persistence, and pace in 2-hour increments throughout an 8-hour work day with normal work breaks; and frequent contact with supervisors and coworkers.

Tr. at 50-51 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that "[t]hrough the [DLI, Plaintiff] was unable to perform any past relevant work" as a "Shipping Order Clerk." Tr. at 57 (some emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("49 years old, which is defined as a younger individual age 18-49 on the alleged onset date," but "subsequently changed age categories to closely approaching advanced age and was then a person of advanced age at age 56 at the time of the [DLI]"), education ("at least a high

school education"), work experience, and RFC, the ALJ again relied on the VE's testimony and found that "[t]hrough the [DLI], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." Tr. at 54 (emphasis and citation omitted). The ALJ found representative jobs to be "Laundry Laborer," "Hand Packager," and "Counter Supply Worker." Tr. at 58. The ALJ concluded Plaintiff "was not under a disability . . . at any time from March 1, 2014, the alleged onset date, through March 31, 2021, the [DLI]." Tr. at 58 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec.,

959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff argues the ALJ erred in evaluating the prior administrative medical findings of Dr. Ragsdale, who reviewed the file on June 26, 2019 and opined on Plaintiff's mental work-related limitations. Pl.'s Mem. at 2-7, 11-13. According to Plaintiff, the ALJ improperly excluded certain limitations assigned by Dr. Ragsdale, while at the same time finding his "assessments generally persuasive." Id.; Tr. at 56. Responding, Defendant asserts the ALJ was not required to adopt Dr. Ragsdale's limitations verbatim, and the ALJ properly considered and evaluated them. Def.'s Mem. at 9-11, 13-14.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting

the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical condition, including judgments about the nature and severity of [a claimant's] impairments, [a claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). [8] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates

---

[8] Plaintiff filed her DIB application after the effective date of section 404.1520c, so the undersigned applies the revised rules and Regulations.

- 9 -

[the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[9]

---

[9] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

When evaluating mental impairments, the Regulations direct the use of a "special technique." 20 C.F.R. §§ 404.1520a(a), (b) and 416.920a(a), (b). In the first step of the psychiatric review technique, it is determined whether a claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1). Next, if there is a medically determinable mental impairment, the degree of functional limitation resulting from such impairment is ascertained. 20 C.F.R. §§ 404.1520a(b)(2), (c) and 416.920a(b)(2), (c). The degree of functional limitation resulting from a medically determinable mental impairment is ascertained by rating four "broad functional areas" in the listings: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00E. These broad functional areas are rated using a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4). After the degree of functional limitation resulting from the claimant's medically determinable mental impairment is rated, the severity of the mental impairment is established. 20 C.F.R. §§ 404.1520a(d) and 416.920a(d).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary,

it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink, 935 F.3d at 1268); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

The special technique used in earlier steps is distinct from the analysis of a claimant's RFC. See 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3); see also Winschel v. Comm'r, 631 F.3d 1176, 1180 (11th Cir. 2011). Nevertheless, the ALJ in assessing an RFC and later posing a hypothetical to a VE should take into account the special technique findings and either "implicitly account for [any] limitation[s]" or "indicate that medical evidence suggest[s a claimant's] ability to work [is] unaffected by th[e] limitation[s]." Winschel, 631 F.3d at 1180.

Here, the ALJ found in the Decision as follows:

> In June 2019, the state agency psychological consultant, Dr. Ragsdale, opined that [Plaintiff] has mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentrating,

> persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. Dr. Ragsdale opined that [Plaintiff] is moderately limited in her ability to carry out detailed instructions and with the ability to maintain attention and concentration for extended periods. She is also moderately limited in her ability to complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number of length rest period. [sic] She also has moderate limitation in the ability to respond appropriately to changes in the work setting. Dr. Ragsdale opined that [Plaintiff] has no evidence of limitation or is not significantly limited in all the other categories in the questionnaire. Dr. Ragsdale['s] assessments are generally persuasive because he supported his opinion with findings from the record and they are generally consistent with the overall record, detailed [elsewhere in the Decision].

Tr. at 56 (citations omitted).

The ALJ accurately summarized the bulk of Dr. Ragsdale's findings and determined Dr. Ragsdale's "assessments [were] generally persuasive." Compare Tr. at 56 (Decision), with Tr. at 486-504 (Dr. Ragsdale's findings). As far as mental limitations, the RFC limited Plaintiff to:

> simple, routine, tasks defined as SVP 1-2, reasoning level no greater than 2; can maintain attention, concentration, persistence, and pace in 2-hour increments throughout an 8-hour work day with normal work breaks; and frequent contact with supervisors and coworkers.

Tr. at 50-51.

The ALJ, in assessing the RFC, omitted various work-related functions that would have accounted for Dr. Ragsdale's most severe finding. Moreover, the ALJ did not explain these omissions despite finding Dr. Ragsdale's assessments to be "generally persuasive."[10] Tr. at 56. Finally, the ALJ assigned at the special technique level that Plaintiff had "mild limitation" in adapting or managing herself, but this ignores Dr. Ragsdale's assessment that Plaintiff has moderate limitation in this area, and otherwise relies on findings that are not supported by substantial evidence.

Dr. Ragsdale assessed that Plaintiff had moderate limitation in "[t]he ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. at 502. Elaborating, Dr. Ragsdale wrote in part: "the symptoms of and/or the functional disadvantages associated with, the mental MDIs, could lead to inconsistencies in [Plaintiff's] attention, on-task behavior, reliability, and efficiency/accuracy - particularly in the context of cognitively-complex, time-sensitive work assignments." Tr. at 503. The RFC, however, does not account for these

---

[10] It is apparent that the ALJ—in translating Dr. Ragsdale's findings to RFC limitations—accounted for a number of Dr. Ragsdale's findings, including moderate limitations in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, and ability to respond appropriately to changes in the work setting. But, as explained herein, the ALJ did not account for all of Dr. Ragsdale's findings or explain why she did not.

findings, and there is no explanation of why. See Schink, 935 F.3d at 1269 ("although the ALJ states he 'considered all symptoms' when assessing the claimant's RFC, the content of his discussion demonstrates he did not"). Judicial review is frustrated.

Moreover, in performing the special technique earlier in the sequential inquiry, the ALJ found, contrary to Dr. Ragsdale, that Plaintiff had only "mild limitation" in the area of adapting or managing herself. Tr. at 50. Dr. Ragsdale assessed moderate limitation in this area. Tr. at 498. In support of the assessment of mild limitation in adapting or managing herself, the ALJ found among other things that Plaintiff "is able to complete basic household chores without assistance," "is able to manage money effectively," and is "able to pay the bills and can complete the grocery shopping independently." Tr. at 50. In support, the ALJ cited Exhibits 7F and 13F, which contain consultative examination reports of Maria E. Jiminez, Psy.D., and Sara E. Malowitz, Psy.D., respectively. See Tr. at 404-06, 482-85. While there is support in Dr. Jiminez's report for these findings, Tr. at 405, Dr. Malowitz's report does not support the findings overall. In particular, Dr. Malowitz did state Plaintiff is "able to complete basic household chores without assistance," but simultaneously wrote Plaintiff "stated that she does not have a daily cleaning regimen and often neglects her chores depending on her mood"; "denied being able to manage money effectively due to impulsive spending habits"; and "stated that she is

capable of paying her bills and completing grocery shopping when she is not having a 'bad day,'" but "when her symptoms are severe, she is unable to complete those tasks independently." Tr. at 483; see also Tr. at 215-18 (Plaintiff's function report containing similar allegations about having trouble with personal care and activities of daily living on bad days and trouble paying bills independently). Dr. Malowitz determined that Plaintiff's "presentation appeared valid and consistent with the reported conditions." Tr. at 485.

    More importantly, though, Dr. Malowitz found Plaintiff's "mental health symptoms . . . appear to be moderately impacting activities of daily living, vocational performance, and interpersonal interactions," Tr. at 485, and Dr. Jimenez found Plaintiff's "mental health symptoms . . . appear to be moderately to severely impacting activities of daily living, vocational performance, and interpersonal interactions," Tr. at 406. Despite these findings being consistent with Dr. Ragsdale's assessment of moderate limitations in adapting or managing herself, the ALJ still found Plaintiff had only mild limitations in this area. And, in addressing the two consultative examiners' opinions, the ALJ made inconsistent findings. As to Dr. Jiminez, the ALJ found the "opinion is a little persuasive because it is supported by . . . the consultative examination" but is "somewhat inconsistent with the overall record which generally showed a normal mood, no memory deficits, and no problems with activities of daily living." Tr. at 53. As to Dr. Malowitz, the ALJ found the "opinion is persuasive

- 16 -

because it is supported by . . . the consultative examination" and "is also consistent with the overall evidence including the prior consultative examination [of Dr. Jiminez] from November 2018." Tr. at 55. The ALJ's observation of the record being inconsistent with Dr. Jiminez's opinion but then reliance in part on the opinion's consistency with Dr. Malowitz's opinion is not adequately explained. Judicial review is once again frustrated.

In sum, the ALJ erred in addressing Dr. Ragsdale's prior administrative findings and related matters on Plaintiff's mental functioning. The matter must be reversed and remanded for reconsideration.

## V.  Conclusion

In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A) Reconsider Dr. Ragsdale's prior administrative findings, as well as related evidence, about the effects of Plaintiff's mental conditions on her ability to work;

(B) If appropriate, address Plaintiff's other arguments in this appeal; and

(C)  Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 18, 2024.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record